## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARK SHULTZABERGER and** | * | |
| **KIMBERLY SHULTZABERGER** | | |
| **9094 Groundhog Lane** | * | |
| **Marshall, Virginia 20115,** | | |
| | * | |
| *Plaintiffs,* | | |
| | * | **Case No.: 1:15-cv-50** |
| **v.** | | |
| | * | |
| **CHESACO MOTORS, INC.** | | |
| **10946 Beaver Dam Road, Ste. G** | * | |
| **Hunt Valley, MD 21030-2223** | | |
| | * | |
| **Serve on:** | | |
| | * | |
| **Vadim Steven Shapiro** | | |
| **Resident Agent** | * | |
| **10946 Beaver Dam Road, Suite G** | | |
| **Hunt Valley, MD 21030-2223,** | * | |
| | | |
| **and** | * | |
| | | |
| **KEYSTONE RV COMPANY** | * | |
| **2642 Hackberry Drive** | | |
| **P.O. Box 2000** | * | |
| **Goshen, IN 46526** | | |
| | * | |
| **Serve on:** | * | |
| | | |
| **David G. Thomas** | * | |
| **Secretary** | | |
| **2642 Hackberry Drive** | * | |
| **P.O. Box 2000** | | |
| **Goshen, IN 46526,** | * | |
| | | |
| *Defendants.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Mark Shultzaberger and Kimberly Shultzaberger file this

Complaint and Demand for Jury Trial through their counsel, E. David Hoskins and Max F. Brauer of The Law Offices of E. David Hoskins, LLC and for cause states:

## PRELIMINARY STATEMENT

1.      This case involves a seriously defective "lemon" Recreational Vehicle ("RV"), a 2013 Voltage V3005, VIN 47CFVTS25DC663160 (the subject RV) costing over $45,000.00 (plus finance charges). The vehicle has serious defects including the failure of the air conditioning to work properly, serious electrical problems, and other manufacturing defects rendering it dangerous and not fit for the purpose for which it was intended. As alleged more fully herein, Plaintiffs assert claims under the applicable provisions of the Maryland Commercial Code (UCC), the Magnuson Moss Warranty Act and the Maryland Consumer Protection Act.

## IDENTIFICATION OF PARTIES

2.      Mark Shultzaberger and Kimberly Shultzaberger are consumers who reside in Virginia and purchased a 2013 Voltage V3005 RV from Chesaco Motors, Inc. at its "Triangle RV" location at 1501 E. Patrick Street, Frederick, Maryland 21701.

3.      Chesaco Motors, Inc. (hereinafter Chesaco) is a domestic Maryland corporation that does business as Triangle RV and operates as a recreational vehicle dealership and owns and operates the recreational vehicle dealership where the Plaintiffs purchased the 2013 Voltage V3005, VIN

47CFVTS25DC663160. Chesaco Motors, Inc. is the seller of the subject RV and is a warrantor of the subject RV that the Plaintiffs purchased.

4.     Defendant Keystone RV Company (hereinafter Keystone) is a foreign corporation doing business in Maryland and is the manufacturer of the subject RV and is a warrantor of the subject RV that the Plaintiffs purchased.

5.     Both Defendants are "merchants" as defined by Md. Code Ann., Comm. Law § 2-104(1).

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the matter in controversy, upon information and belief, exceeds $75,000 and is between citizens of different States. Subject matter jurisdiction is also conferred by 15 U.S.C. § 2310(d) and 28 U.S.C. § 1331 because a federal claim exists in which there is more than $50,000 in controversy.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because both Defendants regularly conducts business throughout this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this judicial district.

## STATEMENT OF FACTS

8.     Plaintiffs Mark Shultzaberger and Kimberly Shultzaberger purchased the subject RV on January 26, 2013. On that date, they signed the purchased paperwork and performed a walk through of the subject RV and created a punch lists of items that were to be taken care of before final delivery of

the subject RV. This list included fixing the lack of heat in the bedroom, speaker crackle, improperly installed trim about the entrance door and a misalignment of the exterior compartment door.

9.     When the vehicle was purchased on January 26, 2013, it came with an express written warranty from Keystone (*see* Express Warranty, **Exhibit 1**).

10.     Chesaco also agreed to sell and install a Resse hitch to the Plaintiffs.

11.     Plaintiffs took delivery of the subject RV on February 21, 2013 and were expressly told by Chesaco's employees and agents that all of the items on the punch list had been repaired. Plaintiffs were also advised that in order to get more heat into the bedroom they would need to cover the heat register in the bathroom with a floor mat. Plaintiffs were also advised that if this solution did not result in sufficient heat reaching the bedroom they should return the subject RV for additional repairs.

12.     Also on February 21, 2013, a hitch was installed on the Plaintiffs' truck, but the hitch was not a Reese hitch as had been ordered by the Plaintiffs.

13.     Shortly after returning home with the subject RV, the Plaintiffs tested the heat delivery to the bedroom by covering the register in the bathroom and there was noP improvement. Even with every other register in the vehicle closed and seal no air movement came from the bedroom register.

14.     While inspecting the bedroom heat register Plaintiffs noticed for the first time that trim board was missing around the living room slide out and that there was rubber seal damage to the slide out as well. There were also cuts in the

rear bunk bed material.

15.    Mark Shultzaberger promptly called Chesaco and the person to with whom he spoke requested that pictures be taken and sent to Chesaco so that the parts needed for repairs could be ordered.

16.    Shortly thereafter Plaintiffs returned the subject RV to Chesaco for repairs. At this time Chesaco employees were observed taking additional photographs of the damage.

17.    After a significant delay, Chesaco claimed that it had repaired the subject RV and Mark Shultzaberger returned to Frederick to retrieve the subject RV.

18.    Later that day Mark Shultzaberger noticed broken screw heads on the ground under the bedroom slide out and contacted Chesaco to schedule further repairs.

19.    Mark Shultzaberger delivered the subject RV for service on April 3, 2013. On May 6, 2013, the repairs had still not been completed and Mark Shultzaberger sent an email explaining that he would need the subject RV back for a trip scheduled to begin on May 30, 2013.

20.    On May 16, 2013, Mark Shultzaberger retrieved the subject RV and delivered it to Camping World in Winchester, Virginia to have toppers put on the slide outs. Mr. Shultzaberger did not take the vehicle to Chesaco because they failed to give him a quote after requesting one from Chesaco.

21.    From May 30 to June 2, 2013, Plaintiffs used the subject vehicle for

their first trip. During that trip the air conditioner was unable to cool the unit and the water faucet in the kitchen had a poor water flow.

22. Upon returning, Mark Shultzaberger contacted the service technician at the Gambrills, MD location. There were no available appointments before the Plaintiffs' next trip so they scheduled a service appointment for August 14, 2013.

23. Mark Shultzaberger then contacted another dealership with a service department, Doves Camper in Harrisonburg, Virginia, and was given brief advice on what to look for to determine the cause of the lack of air conditioning. Upon inspecting the air ducts, Mark Shultzaberger observed that they were collapsing and that there were bare wires going to the thermostat module.

24. Plaintiffs used the subject RV for their second trip from August 1 to August 9, 2013. During that trip there were two storms, during each of which the subject RV sprung major leaks, first in right side toy hauler window and then in the bathroom skylight. The air conditioning unit also failed to operate properly.

25. Plaintiffs delivered the subject RV to Chesaco's Gambrills, MD location on August 10, 2013, which was approximately a two-hour drive from Plaintiffs house. Together with a Chesaco employee named Chuck, Mark Shultzaberger went through the subject RV and noted the following defects: two water leaks, air conditioning unit not cooling, poor water flow from the kitchen faucet, sharp objects protruding on edges of the rubber roof, sunlight shining through a gap above the refrigerator, bathroom floor tile lifting up by the floor

register, caulking left where previous repairs had been performed, air conditioning grill broken, the rear sliding glass door coming open in transit, and the bare wires. Chuck agreed that these items would be repaired and to also install outside compartment locks for the inconvenience the Shultzaberger's were having free of charge.

26.    It was especially important to the Plaintiffs that the air conditioning adequately cool the entire unit because a major reason they bought the unit was so that they could travel with other family members and the Shultzaberger's dogs and leave them in the air conditioned unit while they were out. The Shultzaberger's bought the RV in order to sleep 7 people, but they cannot sleep this many because of the air conditioning problems.

27.    On September 16, 2013, Plaintiffs received a call from Chesaco that the subject RV had been repaired and was ready for pickup. When Mark Shultzaberger inspected the subject vehicle, he quickly determined that a number of the promised repairs had not been made. The faucet was not fixed, the sharp objects were still protruding from the rubber roof, the bathroom floor was not fixed and the locks were not installed. Worse, there was new damage to the gel coat where the window was repaired and scratched. The rear toy hauler window was repaired improperly and eventually had to be replaced with a properly installed new window at another location, Safford RV in Thornburg, VA. Needing the subject RV for another trip, Mark Shultzaberger left the dealership with the subject RV having been promised that a new faucet would be shipped to his

house where he could easily install it himself. This faucet was never shipped.

28. The next day over the telephone, Mark Shultzaberger attempted to address the shoddy workmanship with Chuck, the service manager at Chesaco's Gambrills location. He explained the shoddy repairs to Chuck, who requested that Mark Shultzaberger bring it back and Chesaco could make it right.

29. At this point Mark Shultzaberger contacted the manufacturer, Defendant Keystone, to explain his dissatisfaction with the subject vehicle. Mark Shultzaberger was told to take the subject vehicle to another dealer for inspection and repairs.

30. During the third trip, the air conditioning continued to fail to cool the unit.

31. On November 15, 2013, Mark Shultzaberger delivered the subject RV to Safford RV in Thornburg, Virginia, a drive of one hour and fifteen minutes. Safford RV kept the subject RV until February 14, 2014, waiting for authorization to perform repairs under the warranty.

32. Plaintiffs took another trip with the subject RV from April 19, 2014 through April 26, 2014. During that trip the air conditioner again failed to cool adequately and further defects in the workmanship became obvious, including wood corner trim coming loose, and the kitchen exhaust fan flapper fell off. In addition, Mark Shultzaberger found that the heat was not working in the toy hauler, and the bathroom floor started bubbling around the register. The left rear tire also developed an unexplained slow leak.

8

33.     On May 1, 2014, Mark Shultzaberger again delivered the RV to Safford RV for further work on the defective air conditioning. The subject RV was kept until June 21, 2014 and still not repaired satisfactorily. Keystone RV suggested that Mark Shultzaberger run both air conditioners with the blinds shut, and close off the bathroom and master bedroom air conditioning registers to better cool the living area. This suggestion did not improve the comfort in the unit and failed to cool the unit properly.

34.     During the next trip, from June 29 to July 6, 2014, the grey tank sprang a leak which cause the underbelly of the subject RV to sag.

35.     The subject RV was again returned for service to Safford RV on July 8, 2014.

36.     Safford RV again kept the subject RV for several weeks ordering and installing a new grey water tank. While testing the tank another leak was found in the black water system at the toilet and that needed further repair.

37.     Mark Shultzaberger picked up the subject RV from Safford RV on or about Monday, August 25, 2014. Safford RV installed a new grey water tank, installed a new black water tank, performed repairs on the water system, and installed a faucet that finally works.

38.     Nevertheless, the air conditioning still fails to cool the subject RV.

39.     The conduct of Defendants and inability to repair the vehicle resulted in the Plaintiffs having to cancel several camp reservations because the subject RV was awaiting repairs.

9

40.   On July 30, 2014, Plaintiffs through undersigned counsel provided all Defendants with a written demand for rescission and revocation of acceptance. **Exhibit 2**.

41.   Defendants have refused to honor Plaintiff's demand for rescission and revocation of acceptance or to provide the Plaintiffs with a refund.

42.   As a direct consequence of the acts, practices and conduct of Defendants, Plaintiffs have been deprived of the benefit of their bargain; have been defrauded and deceived into purchasing a vehicle that Defendants knew or should have known was in a defective condition; were defrauded and deceived into purchasing a vehicle worth far less than the amount Plaintiffs paid and whose resale value is greatly diminished; have been unable to recover the funds paid for the vehicle; have incurred and continue to incur finance charges; have overpaid and will continue to overpay for insurance and taxes; have experienced and will continue to experience problems with the vehicle due to the various defects described above; and have lost the use and full value of the subject RV.

43.   Plaintiffs have suffered economic loss as well as loss of the use of the subject RV causing significant inconvenience and aggravation to Plaintiffs who have also incurred other compensatory damages for loss of work, loss of free time and vacation time.

44.   The subject RV has been in for warranty repair and service multiple times for a laundry list of defects far exceeding what a reasonable person would expect for a vehicle that should have been manufactured right in the first place.

The vehicle has been out of service by reason of repairs an unreasonable number of days and far exceeding what a reasonable person would reasonably expect for the quality of the RV that Defendants represented the subject RV would be.

**COUNT ONE**
**BREACH OF EXPRESS AND IMPLIED WARRANTIES AND**
**REVOCATION OF ACCEPTANCE**

45.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

46.     Defendants, merchants as defined in Md. Code Ann., Comm. Law § 2-104, sold Plaintiffs a consumer good, the subject RV. Plaintiffs had express warranties and implied warranties with both Defendants, pursuant to both written warranties and implied warranties in accordance with Maryland law.

47.     Defendants breached these warranties to Plaintiffs and/or negligently designed and constructed and sold the subject RV. The subject RV is a vehicle that failed to operate and function right and was not fixed within a reasonable number of attempts or within a reasonable amount of time. Further, the laundry list of problems, combined with the number of days the subject RV spent out of service, substantially impairs the vehicle's use and/or value and/or safety to Plaintiffs.

48.     Plaintiff, Mark Shultzaberger, reported these non-conformities within a reasonable time of discovery, and during the warranty period, but Defendants have either refused or been unable to repair the defects in the subject RV within a reasonable amount of time or a reasonable number of attempts.

49.     Defendants sold Plaintiffs a recreational vehicle that was not merchantable in violation of section 2-314 of Maryland's Commercial Law Article in that the subject RV would not pass without objection as an undamaged car and was not fit for the ordinary purposes for which a recreational vehicle is used.

50.     At the time the contract papers were signed, Defendants had reason to know that Plaintiffs needed a reliable recreational vehicle that would be available for retirement camping and vacation use without the need for repeated repairs and that Plaintiffs were relying on Defendants' skill and judgment to select or furnish a suitable recreational vehicle.

51.     In breach of the implied warranty of fitness for particular use which arises under section 2-315 of Maryland's Commercial Law Article, Defendant Chesaco failed to select or furnish Plaintiffs with such a recreational vehicle

52.     Plaintiffs faith and confidence in the reliability of the subject RV and the ability of Defendants to live up to express and implied warranties has been seriously shaken. The defects in the subject RV have seriously shaken the Plaintiffs' faith an undermined their confidence in the reliability and integrity of the subject RV and its component parts and substantially impaired the value of the subject RV to the Plaintiffs. Plaintiffs believe and allege herein that the Defendants' warranties have both been breached for all of the reasons set forth above.

53.     The subject RV was subject to multiple repair attempts, was out of service for months and had multiple different defects which substantially

impaired the use and/or safety of the subject vehicle.

54.   The subject vehicle, at the time of sale, did not conform to ordinary standards in that it was represented either expressly or impliedly.

55.   The essential purpose of the warranties to Plaintiffs on the subject RV was to give Plaintiffs confidence in the ability of Defendants to design, construct and sell a safe and reliable recreational vehicle and component parts and that the recreational vehicle and its component parts would not be plagued with excessive and unreasonable defects and malfunctions and/or require repeated and/or unsuccessful repair attempts to cure the subject RV of its defects and malfunctions. However, the express and implied warranties to Plaintiffs have failed of their essential purpose.

56.   Nonconformities in the subject RV substantially impair its value to the Plaintiffs who did not know of these non-conformities or undisclosed damage prior to purchase and were misled by Defendants' assurances.

57.   Although Plaintiffs revoked their acceptance of the subject RV by letter dated July 30, 2014, and tendered delivery of the subject RV, Defendants have failed and refuses to honor Plaintiffs' revocation of acceptance in violation of section 2-608 of Maryland's Commercial Law Article.

58.   As a result of the above and the allegations below Defendants Chesaco and Keystone breached their obligations to Plaintiffs and thereby caused injury to Plaintiffs under Md. Code Ann., Comm. Law §§ 2-301, *et seq.*, including but not limited to §§ 2-313, 2-314 and 2-315.

59.   Plaintiffs seek cancelation of the contract, repayment to them of their purchase price and all additional fees including all interest and finance charges and they have been otherwise injured and damaged.

WHEREFORE, Plaintiffs pray for an Order rescinding their purchase of the subject RV and requiring that Defendants return all funds the Plaintiffs have paid in connection with its purchase. Plaintiffs further pray that Defendants be denied an allowance for the Plaintiffs' use of the subject RV and that Plaintiffs receive such incidental and consequential damages as the evidence shall sustain.

**COUNT TWO**
**CANCELLATION UNDER MAGNUSON-MOSS WARRANTY ACT**

60.   Plaintiffs re-allege and incorporate by reference the allegations set forth above.

61.   This count is an action against Defendants brought pursuant to § 2310(d) of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 (hereafter "Magnuson-Moss") for actual damages and to cancel the contract pursuant to the Plaintiffs' rejection or in the alternative revocation of acceptance for Defendants' breach of implied warranties.

62.   The subject RV is a consumer product as that term is defined in § 2301(1) of Magnuson-Moss and was manufactured after July 4, 1975.

63.   The Defendants are warrantors as that term is defined in § 2301(5) of Magnuson-Moss.

64.   The Plaintiffs are consumers as that term is defined in § 2301(3) of

Magnuson-Moss.

65.     The Defendants have no dispute resolution mechanism that meets the requirements of 16 C.F.R. Part 703, promulgated by the Federal Trade Commission (FTC) pursuant to § 2301(a)(2) of Magnuson-Moss.

66.     The Plaintiffs gave Defendants a reasonable opportunity on several occasions as described above the cure their failures to comply with their warranties and Defendants did no cure.

67.     If Plaintiffs prevail, they are also entitled to an award of reasonable attorneys' fees, costs and interest under 15 U.S.C. § 2310(d)(2).

WHEREFORE, Plaintiffs pray that this court:

     a.     Declare that the contract involved herein is canceled;

     b.     Enter judgment for Plaintiffs and against Defendants, jointly and severally, for damages in an amount in excess of $75,000.00;

     c.     Award the Plaintiffs their costs and reasonable attorney fees to be paid jointly and severally by Defendants; and

     d.     Grant such other relief as may be just and proper.

## COUNT THREE
## DAMAGES UNDER MAGNUSON-MOSS WARRANTY ACT

68.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

69.     This count is an action, brought in the alternative to Count Two, in the event that Plaintiffs' cancellation is not given legal effect, against both

Defendants pursuant to § 2310(d) of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 for actual damages.

WHEREFORE, Plaintiffs pray that this court:

a.     Enter judgment for Plaintiffs and against Defendants, jointly and severally, for damages in an amount in excess of $75,000.00;

b.     Award the Plaintiffs their costs and reasonable attorney fees to be paid jointly and severally by Defendants; and

c.     Grant such other relief as may be just and proper.

## COUNT FOUR
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT BY DEFENDANT CHESACO

70.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

71.     The Maryland Consumer Protection Act ("MCPA") applies because the Plaintiffs are consumers, the subject RV was bought for consumer use and the Defendants are merchants in accordance with Md. Code Ann., Comm. L. § 13-101.

72.     The MCPA, at Md. Code Ann., Comm. L. § 13-301, deems the following to be an unfair and deceptive trade practice in violation of the law:

a.     False, falsely, disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers. Md. Code Ann., Comm. L. § 13-301(1).

b.     Representation that consumer goods . . . or consumer services

16

have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit or quantity which they do not have. Md. Code Ann., Comm. L. § 13-301(2)(i);

      c.    Representation that consumer goods . . . or consumer services are of a particular standard, quality, grade, style or model which they are not.Md. Code Ann., Comm. L. § 13-301(2)(iv);

      d.    Failure to state a material fact if the failure deceives or tends to deceive. Md. Code Ann., Comm. L. § 13-301(3);

      e.    Advertisement or offer of consumer goods . . . or consumer services without intent to sell . . . them as advertised or offered. Md. Code Ann., Comm. L. § 13-301(5)(i);

      f.    Deception, fraud, false pretense, false premise, misrepresentation or knowing concealment, suppression or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods . . . or consumer service. Md. Code Ann., Comm. L. § 13-301(9)(i);

      g.    Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the kind of merchandise . . .or service solicited. Md. Code Ann., Comm. L. § 13-301(9)(iii).

      73.    Defendant Chesaco violated these provisions in the following ways:

      a.    Failing to reveal the numerous problems with the subject

vehicle to the Plaintiffs;

b.      Failing to honor an express and implied warranty imposed by law;

c.      Repeatedly misrepresenting that the subject RV had been repaired when it had not;

d.      Falsely stating that the air conditioning was operating properly when it was not; and

e.      Falsely stating that the toy hauler and garage were not required to be air conditioned because they were not living areas.

74.     As a direct consequence of the acts, practices and conduct of Defendant Chesaco, Plaintiffs have suffered economic loss, inconvenience, as well as other compensatory damages and is entitled to damages and attorneys fees pursuant to CPA § 13-408.

WHEREFORE, Plaintiffs demand judgment in an amount in excess of $75,000.00 against Defendant Chesaco, with prejudgment interest, costs and a reasonable attorneys fee as provided for by the MCPA.

## COUNT FOUR
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT BY DEFENDANT KEYSTONE

75.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

76.     Defendant Keystone violated the MCPA in the following ways:

a.      Falsely advertising and selling a recreational vehicle that was

defective and dangerous;

        b.     Failing to honor an express and implied warranty imposed by law;

        c.     Repeatedly misrepresenting that the subject RV had been repaired when it had not;

        d.     Falsely stating that the air conditioning was operating property when it was not; and

        e.     Falsely stating that the toy hauler and garage were not required to be air conditioned because they were not living areas.

71.    As a direct consequence of the acts, practices and conduct of Defendant Keystone, Plaintiffs have suffered economic loss, inconvenience, as well as other compensatory damages and is entitled to damages and attorneys fees pursuant to CPA § 13-408.

WHEREFORE, Plaintiffs demand judgment in an amount in excess of $75,000.00 against Defendant Keystone, with prejudgment interest, costs and a reasonable attorneys fee as provided for by the MCPA.

## JURY TRIAL DEMAND

Mark and Kimberly Shultzaberger demand a trial by jury on all claims so triable.

Dated: January 7, 2015          Respectfully Submitted,


/s/ E. David Hoskins
E. David Hoskins, Esq.
Fed. Bar No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)


/s/ Max F. Brauer
Max F. Brauer, Esq.
Fed. Bar No. 30162
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)